NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4184

UNITED STATES OF AMERICA

v.

MICHAEL SHAWN WOODS,
       Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Crim. No. 03-cr-00039E
District Judge: The Honorable Maurice B. Cohill, Jr.

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2005

Before: SLOVITER, BARRY, and SMITH, Circuit Judges

(Opinion Filed September 20, 2005)

OPINION

BARRY, Circuit Judge

  A six count indictment charged Michael Woods with, among other things, manufacturing methamphetamine. Woods filed a motion to suppress, which the District

Court denied. Woods then pled guilty, conditioned on his right to appeal the following issue: "Suppression of evidence located in his barn due to an alleged unlawful search of that barn." Supp. App.19. The District Court sentenced Woods to 108 months in prison to be followed by three years of supervised release. Woods timely appealed. We will affirm the conviction and remand for resentencing.

This appeal centers on whether the District Court erred in concluding that the officers had probable cause to search Woods' barn -- or to be precise, a room in Woods' barn -- without a warrant. We review the denial of a motion to suppress for clear error as to the underlying factual determinations, and exercise plenary review over the application of the law to those facts. *See United States v. Lockett*, 406 F.3d 207, 211 (3d Cir. 2005).

In March 2003, Melanie Hansen, a probation officer charged with supervising one Dale Spangler, received a phone call from Spangler's girlfriend, Terry Hart, who informed Hansen that she had kicked Spangler out of her house. Spangler had not told Hansen of his new address and did not show up for a scheduled appointment with her. On the day of the missed appointment, Hart called to tell Hansen that Spangler was using drugs and was now living with Woods. Several days later, Hart again called, this time to tell her that Spangler was then at Woods' residence.

Armed with this knowledge of Spangler's whereabouts, and because Spangler had

violated probation,[1] the decision was made to arrest him. Hansen, her supervisor, another probation officer, and a Pennsylvania State Trooper went to Hart's house. Hart told them that she had just spoken to Spangler and that he was at Woods' house, probably in the barn. She stated that there were approximately eight adults and some juveniles at the house, a lot of traffic, and "a possible meth lab." A49. The local constable arrived and informed the officers that he, too, was aware of a lot of traffic and drug action going on at the house.

Hart led the officers by car to Woods' property. Spangler's truck was in the driveway. The officers called for back-up, and once it arrived, broke into two groups. One group surrounded the house, while the other group approached the barn, because, as Hansen explained, this was where she had been told that Spangler was probably staying.

The team that approached the barn identified themselves, and ordered Spangler to come out. They did not hear a response, and entered the barn. Once inside, Woods came out of a room on the upper level and asked the officers what was going on. The officers ordered Woods onto the ground, handcuffed him, and asked him where they could find Spangler. Woods said that Spangler was in the house. The State Trooper went into the room that Woods had just exited to see if anyone else was there. When the Trooper

---

[1] The officers had probable cause to believe that Spangler had violated the terms of his probation. This is not in dispute. Among other violations, Spangler missed a scheduled meeting with his probation officer, and, under Pennsylvania law, this entitled his probation officer to immediately arrest him without a warrant. 61 P.S. § 309.1.

emerged, he said "I smell meth in here; he's cooking meth. I see methamphetamine." A87. Shortly thereafter, Spangler was found in the house and placed under arrest. Spangler told the officers that he had been staying at Woods' house, and that Woods had "turned me onto lines of meth a few times downstairs in the barn," but that he was not allowed upstairs. A90. Armed with this information, and the Trooper's observations of the meth lab in the upstairs room, a search warrant was obtained and the evidence which led to Woods' arrest and indictment seized.

On appeal, Woods argues that the District Court erred in finding that the warrantless search of the barn was a lawful protective sweep. We note that the only warrantless search was that of the room in the barn from which Woods emerged. We note, as well, that it appears that all or virtually all of the evidence against Woods came from that room and not elsewhere in the barn.

The Supreme Court has held that the police cannot enter the residence of a third party to search for an individual subject to arrest, unless they have a separate search warrant to do so. *Steagald v. United States*, 451 U.S. 204, 205-06 (1981). The Court, however, noted that there are some exceptions to this rule, such as when the third person's home is, in fact, the residence of the person that the police seek to arrest. *See id*. at 221; *see also Shea v. Smith*, 966 F.2d 127, 131 (3d Cir. 1992) (police armed with probable cause can enter a third party's home without a search warrant if they believe the suspect resides there).

Here, the officers had a reasonable belief that Spangler was residing with Woods because his girlfriend told them so, and had told them that he was probably staying in the barn. Additionally, when the officers arrived at the Woods' property, Spangler's vehicle was in the driveway. No search warrant was necessary before they could enter Woods' barn to look for and arrest Spangler and, the government's suggestion to the contrary, we do not understand Woods to be seriously challenging the entry itself.

But, says Woods, even if the officers could have entered the barn to arrest Spangler, they did not have the right to search the barn under the pretext of a protective sweep. We need not decide whether there was a "protective sweep" here, and if so, whether it was lawful. We need only find that, it being undisputed that, under Pennsylvania law, the officers had the authority to arrest Spangler, until the point of his arrest they had the right to search anywhere in the barn that he might been found. *See Maryland v. Buie*, 494 U.S. 325, 330 (1990). Because, therefore, the Trooper's entry into the room in which the meth lab was found was lawful, the District Court did not err in denying the motion to suppress the evidence emanating therefrom.

We will affirm the conviction, vacate the sentence, and remand for resentencing under *United States v. Booker*, 543 U.S. ___, 125 S.Ct. 738 (2005).